**UNITED STATES of America,**

**v.**

**The LaROUCHE CAMPAIGN, Independent Democrats for LaRouche, Michael Gelber, Richard Sanders, Charles Park, Campaigner Publications, Inc., Caucus Distributors, Inc., Lyndon H. LaRouche, Paul Goldstein, Jeffrey Steinberg, Michelle Steinberg, Robert Greenberg, Edward Spannaus, Roy Frankhauser, a/k/a Bill Clay, Richard Black, John Scialdone, National Caucus of Labor Committees, Defendants.**

**Crim. No. 86–323–K.**

United States District Court,
D. Massachusetts.

Oct. 6, 1987.

John Markham, Boston, Mass., Mark D. Rasch, for the U.S.

Michael Reilly, Paul A. Devlin, Haussermann, Davison & Shattuck, Odin Anderson, Robert Rossi, Thomas G. Shapiro, Rikki Klieman, Owen Walker, Federal Defender's Office, Matthew Feinberg, James E. McCall, Boston, Mass., Edward J. McCormick, III, Norfolk, Mass., Daniel S. Alcorn,

Arlington, Va., William B. Moffitt, William B. Cummings, Alexandria, Va., John A. Baccari, Wakefield, Mass., Mayer Morganroth, Southfield, Mich., Robert F. Collins, Braintree, Mass., for defendants.

## MEMORANDUM AND ORDER

KEETON, District Judge.

This memorandum concerns (a) defendants' joint motions to suppress all documents seized at either the Traveller's Building or the Wheat Building in Leesburg, Virginia, on October 6–7, 1986, on the ground that the search conducted was a forbidden general search and (b) defendants' request for evidentiary hearings bearing upon these motions to suppress.

The filings relevant to these motions are Motion/Docket Nos. 71/271, 97/302, 151/377, 172/404, 307/799, and Supporting and Opposing Submissions, Docket Nos. 463, 488, 742, 833, 848, 924, 1013, 1014, 1015, 1016.

The principal precedent bearing upon the standard for determining whether the search conducted was a forbidden "general search" is *United States v. Heldt*, 668 F.2d 1238 (D.C.Cir.1981) (per curiam), *cert. denied sub nom. Hubbard v. United States*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982).

> If in this case law enforcement officers had conducted a document search as if no limiting warrant existed, rummaging at will among defendants' offices and files, then the mere existence of a valid—but practically irrelevant—warrant for certain specified documents would not be determinative of whether the search was so unreasonable as to require suppression of everything seized. Defendants do show several instances where documents were seized outside the warrant, but they do not demonstrate such flagrant disregard for the terms of the warrant which might make the drastic remedy of total suppression necessary. Absent that sort of flagrant disregard, the appropriate rule seems to be that where officers seize some items outside the scope of a valid warrant, this by itself will not affect the admissibility of other

contemporaneously seized items which do fall within the warrant.

*Id.* at 1259. In further explanation, the court in *Heldt* added:

> In *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), which involved a search and seizure of a criminal defendant's office files, the Supreme Court stated:
>
>> We recognize that there are grave dangers inherent in executing a warrant authorizing a search and seizure of a person's papers that are not necessarily present in executing a warrant to search for physical objects whose relevance is more easily ascertainable. In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized. Similar dangers, of course, are present in executing a warrant for the "seizure" of telephone conversations. *In both kinds of searches, responsible officials, including judicial officials, must take care to assure that they are conducted in a manner that minimizes unwarranted intrusions upon privacy.*
>
> *Id.* at 482 n. 11, 96 S.Ct. at 2749 n. 11 (emphasis supplied).... A proper execution of a search warrant for numerous documents requires three things: adequate preparation; obedience to area limitations; and restrictions on seizure of items not mentioned particularly in the warrant.

*Id.* at 1260–61. Having examined the three matters referred to in the above-cited passage, the court in *Heldt* concluded:

> We must emphasize at this point, however, that our concern with the agents' obedience to the limitations of the warrant relates solely to determining whether a violation of such egregious magniture [sic] occurred that *all* fruits of the search must be suppressed.... If *particular documents* seized under the plain view exception had been admitted as evidence-in-chief against defendants and the admissibility of those documents

had been put in issue before us, an entirely different analysis would be required.

In conclusion, despite the possibility that some (unspecified) documents seized under plain view failed the incriminating character requirement, we hold that the searches of Fifield Manor and Cedars–Sinai were not so unreasonable that total suppression is required.

*Id.* at 1269 (emphasis in original).

The defense arguments presented to the court in the present case emphasize that defendants have called attention to evidence of deficiencies in the advance preparation of law enforcement officers for participation in the search, deviations from area limitations, and instances of seizure of items not covered by an objectively supportable interpretation of the search warrants. Defendants argue that it is reasonable to expect that a full evidentiary hearing would develop additional evidence of violations that would support a finding that the search conducted was a "general search" rather than one authorized by the warrants.

A key deficiency of the defense submissions is that they do not adequately address two matters: (1) the rigor of the *Heldt* standard and (2) the concern, stated in this court's Memorandum of July 31, 1987 (see page 623) and in conferences with counsel both before and after the July 31 Memorandum was issued, that evidentiary hearings not be allowed without some basis being shown for some degree of expectation that the hearing would produce evidence that would suport the relief requested—in this instance, the drastic relief of suppression of all evidence seized, including all the evidence that plainly was within the scope of the first warrant as well as all that plainly was within the scope of the second warrant.

The rigor of the *Heldt* standard is reflected in references to the fact that the remedy it invokes—total suppression of all the documents seized—is "drastic" and that under this standard the kind of search that is characterized as a forbidden "general search" is one that law enforcement

officers conducted "as if no limiting warrant existed, rummaging at will among defendants' offices and files...." 668 F.2d at 1259. Indeed, the court in *Heldt* concluded that no general search requiring total suppression had taken place despite its finding that (1) as many as 50 agents were never given an opportunity to read the warrant or a briefing before the search began and (2) many documents were improperly seized. *See id.* at 1261, 1268.

Although a more limited request for an evidentiary hearing upon the motions to suppress was allowed, defendants have failed to show with any degree of likelihood that evidence developed during a large scale evidentiary hearing would satisfy the essential elements identified in *Heldt* for suppression of all evidence. In fact, on balance, the evidence developed at the more limited evidentiary hearing cuts against defendants' position under *Heldt*.

A substantial number of the documents seized were the subject of the limited hearing, and on findings and conclusions stated in a separate Memorandum of October 5, 1987, I have denied these motions to suppress. Having heard all the evidence proffered by the defendants and by the government bearing upon the participation of the law enforcement officers who were involved in any way with the seizure of documents from the rooms designated as "M" and "O" on the first floor of the Travellers Building, to the right of the corridor as one enters from the front of the building, I have concluded that the defendants have failed to show any basis for suppressing all of the documents seized from those rooms, and I have ruled that, at the least, many of those documents were within the scope of the first warrant. My conclusion suggests that little or no basis exists for defendants' allegation, in their attempt to meet the requirements of *Heldt*, that the government largely failed to restrict their seizures to items mentioned particularly in the first warrant.

Moreover, the evidence received in the more limited evidentiary hearing disclosed the circumstances of an application for and issuance of a second warrant, explicitly authorizing seizure of documents as to which

authority for seizure under the first warrant was in doubt. The caution manifested in the determination to seek a second warrant before seizing documents as to which the authorization was not clear in the first warrant is quite at odds with a description of the search as one conducted in flagrant disregard for the terms of the warrants. This point remains cogent despite the fact that the person primarily responsible for initiating the application for the second warrant—Agent Egan—was the FBI case agent and not directly responsible for supervising the seizing agents.

The limited evidentiary hearing held also revealed that the seizing agents for the documents in room "O", the office occupied by defendant Spannaus who was known to have served as liaison with attorneys, were instructed on the terms of the second warrant, had at least one copy with them, and referred to it from time to time as they examined, seized, and inventoried documents from that room. This is a way of proceeding that suggests adequate preparation and is sharply at odds with the characterization of the search as a "general search."

With two exceptions, the defendants have not alleged disobedience on the part of the government to area limitations in the warrant.

The first exception is that shortly after the initial entry agents opened locked doors into the first area off the central corridor of the Traveller's Building, to the left when entry is made from the front, and the videotaping team moved through this area. I find that this entry was made by mistake, resulting from incorrect determination of which door should be opened as the agents examined doors from the corridor without knowing exactly what was on the other side of the closed doors. I find that this mistake does not support, or even tend to support, a claim that a "general search" occurred.

The second exception is that defendants claim that after entry on the premises the agents should have recognized that room "O" and adjacent spaces and rooms were in a "legal area." Even assuming for purposes of this motion (and without deciding) that defendants are correct in contending that there was some legally implicit limitation in areas to be searched, not stated in the warrant, I cannot conclude that the search of and seizure of documents from office space within what the defendants have chosen to refer to as a "legal area" served to convert the search into a forbidden "general search."

Taking into account all the evidence before me, including that received during the evidentiary hearing allowed as to documents that were the subject of motions to suppress of more limited focus, I find that the evidence before me is sufficient to determine beyond reasonable doubt that the search conducted on October 6–7, 1986, in Leesburg, Virginia was not conducted "as if no limiting warrant existed," was not a "rummaging at will defendants' offices and files," and was not conducted in a manner "demonstrating such flagrant disregard for the terms of the warrant [as to] make the drastic remedy of total suppression necessary" or appropriate. (The quoted phrases are from *Heldt,* 668 F.2d at 1259.) Thus, I conclude that an evidentiary hearing for the sole purpose of determining whether the search conducted was a "general search" justifying suppression of every document seized would be a futile exercise and to allow it would be to permit impermissible discovery in the guise of a hearing on a motion to suppress.

### ORDER

For the foregoing reasons, it is ORDERED:

Defense requests for an evidentiary hearing in support of motions to suppress all documents seized in the search of October 6–7, 1986, at Leesburg, Virginia, are denied.

Defendants motions to suppress all documents seized in the search of October 6–7, 1986, at Leesburg, Virginia—Motion/Docket Nos. 71/271, 97/302, 151/377, 172/404, 307/799—are denied.